IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROSEANN CLARK,                           )
                                         )
          Plaintiff,                     )
                                         )
     v.                                  )     No. 23-cv-13895
                                         )
MEDTRONIC COMPANY, INC.,                 )     Judge John J. Tharp, Jr.
                                         )
          Defendant.                     )
                                         )

**ORDER**

The defendant's motion to dismiss [45] is granted, for the reasons explained in the following Statement. Final judgment shall be entered in favor of the defendant. Civil case terminated.

**STATEMENT**

### I.    Background

Roseann Clark, proceeding pro se, filed this lawsuit against defendant Medtronic Company, Inc., a medical device manufacturer. She seeks to hold it liable for the death of her adult son following his use of an allegedly defective medical device, the Shiley Adult Flexible Tracheostomy Tube (the "Device"). The Device was manufactured by Coviden, a Medtronic subsidiary.

In 2023, the FDA issued a Class I recall of the "Shiley 'Adult Flexible Tracheostomy Tube with TaperGuard' Cuff and Cuffless." Compl. 12, ECF No. 41.[1] The FDA listed the reason for the recall as follows: "A manufacturing error, resulted in a less than specified diameter of adult flexible tracheostomy tube connectors, which results in unsecure connections with 15mm caps and other 15mm circuit components and accessories. An unsecure connection could lead to respiratory failure, dyspnea, treatment delay, tissue injury, or bleeding." *Id.* at 4 ¶ 28.

This Court granted Medtronic's previous motion to dismiss, finding that the complaint failed to provide Medtronic notice of the claims against it. Order 5, ECF No. 33. Following that order, Ms. Clark found counsel to represent her and her counsel filed the operative Seventh

---

[1] Medtronic maintains that a recall was not issued for the specific device Ms. Clark's son used. Mot. Dismiss 11, ECF No. 46. The complaint, however, alleges that it was, and the Court must accept that allegation as true for purposes of this motion.

Amended Complaint. Medtronic again moved to dismiss the complaint, which is now before the Court.

## II.     Discussion

Medtronic filed its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Clark failed to state a claim for which relief can be granted. On a motion to dismiss, the Court accepts the pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Kilborn v. Amiridis*, 131 F.4th 550, 554 (7th Cir. 2025). The Court does not, however, accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Viewed in this light, a complaint must state a facially plausible claim to relief to overcome the motion to dismiss. *Id.*

The operative complaint outlines five theories[2] of relief: strict liability, negligence, breach of implied warranty, breach of express warranty, and wrongful death. To start, wrongful death is not an independent theory of relief. The Illinois Wrongful Death Act does not create a new basis for liability; it simply allows survivors to recover for "grief, sorrow, and mental suffering" they experienced due to the death of their loved one. 740 Ill. Comp. Stat. § 180/2 (West 2026); *id.* § 180/1; *see also Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, at *5 (N.D. Ill. Apr. 9, 2012) ("The decedent must have had the potential, at the time of his death, to maintain a viable cause of action for a personal injury against the defendant. . . . If he did, that right of action transfers to the surviving spouse as his representative."). As such, Ms. Clark's complaint must state a claim under one of her other theories to succeed.

In its order granting Medtronic's first motion to dismiss, this Court explained the deficiencies in the then-operative complaint:

> The FAC omits several key facts that even a minimally compliant pro se products liability complaint should provide. First, it does not identify any defect with Medtronic's medical device. Second, it does not connect the defect with Ms. Clark's son's death (*i.e.*, did the defect cause the injury or death? If so, how?). . . . These missing facts are necessary to bring Ms. Clark's FAC into the realm of plausibility; conclusory allegations do not suffice.

Order 5. Further, the order made clear that an amended complaint would need to "remedy the defects identified" in order to move forward with her claim. *Id.* As explained below, the current

---

[2] Each theory is called a "count" in the complaint. "Counts" are the authorized device for asserting distinct claims—that is, claims "founded on a separate transaction or occurrence"—*see* Rule 10(b), but are often improperly employed to assert different legal theories in support of a claim. As the late Judge Shadur cogently explained, "the use of separate counts to set out different theories of recovery is a mistaken manifestation of the state law 'cause of action' approach, rather than the federal concept of 'claim for relief.' That is not what Rule 10(b)'s last sentence defines as the proper role for any such separation of a pleading into different counts." *Bonestroo, Rosene, Anderlik & Assocs., Inc. v. Devery*, No. 05 C 2184, 2006 WL 1005284, at *11 (N.D. Ill. Apr. 12, 2006) (citation removed). Because Clark's complaint consists of only one transaction or occurrence, her "counts" are really different theories of relief.

complaint does specifically identify an alleged defect in the Device. Critically, however, the operative complaint does not connect that defect with Ms. Clark's son's death.

### A. Identifying the Defect

To succeed in a product liability action, a plaintiff must show that the product was unreasonably dangerous. *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 525 (Ill. 2008). "A product may be found to be unreasonably dangerous based on proof of any one of three conditions: a physical defect in the product itself, a defect in the product's design, or a failure of the manufacturer to warn of the danger or to instruct on the proper use of the product." *Id.* In other words, there are "three theories of strict products liability: manufacturing defects, design defects, and failures to warn." *Hillman v. Toro Co.*, 164 F.4th 971, 978 (7th Cir. 2026).

While the operative complaint alleges that the Device was "defective in design," that Medtronic "incorporate[ed] a defect into the manufacture of Shiley Adult Tracheostomy tubes," and that Medtronic failed to warn Ms. Clark and the public about defects in the Device, Compl. 5 ¶ 38; *id.* at 6 ¶ 44; *id.* at 6 ¶ 46, the complaint does not describe the alleged defective design or what warnings should have been given. It does, however, quote the FDA recall, which describes a manufacturing error that "resulted in a less than specified diameter of adult flexible tracheostomy tube connectors, which results in unsecure connections with 15mm caps and other 15mm circuit components and accessories." Compl. 17. That is a sufficient description of a manufacturing defect for this stage of the action.

### B. Causation

Strict liability, negligence, breach of implied warranty, and breach of express warranty each require a plaintiff to prove that a defect in the Device caused her son's death. *Horne v. Elec. Eel Mfg. Co.*, 987 F.3d 704, 725 (7th Cir. 2021) (explaining that a plaintiff must "demonstrate that the alleged defect caused his injury" for strict product liability, negligence, and breach of warranty based on a product defect). To state a plausible claim for relief, then, Ms. Clark must plead facts that, when accepted as true, support an inference that the alleged defect in the Device caused her son's death. Causation includes both cause-in-fact and legal cause; "[i]f multiple factors have combined to cause an injury, Illinois law asks whether the defendant's conduct was a 'substantial factor' in bringing about the injury." *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 309 (7th Cir. 2010). Because the complaint does not describe in even the vaguest sense how the alleged defect caused the decedent's death, however, it does not plead the requisite facts.

Medtronic argues in its motion to dismiss that "[p]laintiff pleads no facts establishing a nexus between any product defect and Decedent Clark's alleged injuries." Mot. Dismiss 5, ECF No. 46. Ms. Clark responds by pointing out that her complaint alleges both that her son was hospitalized in February 2020 due to tracheostomy bleeding, and that the Device was recalled in 2023 because it could lead to bleeding and respiratory failure (among other things). Resp. 3–4, ECF No. 49. She then argues that "[c]onnecting a Class I recall for a product that can cause 'respiratory failure' to the hospital report where the [Device] caused bleeding and irritation explains the death of Plaintiff's son, who continued us[ing] the [Device], at his home, for one month after his hospital visit." *Id.* at 4. But Ms. Clark's son did not pass until April 26, 2020, more than two months after his February hospitalization for tracheostomy bleeding, and she does not

allege that the bleeding caused or contributed to his death. All Ms. Clark alleges about the circumstances surrounding her son's death is that she called 911 when she noticed that his breathing problems had worsened and that first responders found him "unresponsive, pulseless and apneic." Compl. 3 ¶¶ 19–20.

Without explaining the cause of Ms. Clark's son's death, the complaint cannot raise the plausible inference that some defect in the Device contributed to it. At most it can be said that it is possible that the Device was a substantial factor in the death of her son, "but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). This is especially true where, as here, there are obvious alternative explanations. *Id.* at 567–68. As the complaint notes, the Device was used for purposes "including to provide prophylactic treatment of patients with prior myocardial infarction and a limited ejection fraction, patients who have had spontaneous and/or inducible life-threatening ventricular arrhythmias, and patients who are at high risk for developing such arrhythmias." Compl. 7 ¶ 51. To cross the line from possible to plausible, the complaint would therefore need to plead facts providing some reason to infer that a defect in the Device, and not solely Ms. Clark's son's underlying condition, was a substantial factor in his death. It does not do so. *Iqbal*, 556 U.S. at 682 (holding that in the face of alternative explanation for the allegedly unlawful conduct, plaintiff failed to plead a plausible claim for relief).

Finally, the allegation in the complaint that Ms. Clark's son "suffered injuries resulting in his death" "as a direct and proximate result" of Medtronic's choices in manufacturing and designing the Device is not a factual allegation but a legal one, and therefore is not taken as true for purposes of deciding this motion. Compl. 6 ¶ 41.

\*     \*     \*

Ms. Clark's complaint does not explain how the alleged manufacturing defect in the Device caused her son's death. Not only does she not allege his cause of death, but she also does not allege any facts connecting that cause to the Device. In light of the fact that this Court explicitly warned Ms. Clark that her amended complaint would need to connect the defect with her son's death or face dismissal with prejudice, and that she was represented by counsel, Medtronic's motion to dismiss is granted. The Seventh Amended Complaint is dismissed with prejudice.

Date: April 24, 2026

John J. Tharp, Jr.
United States District Judge

4